UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| IRVIN GUS HALL, II | : | CASE NO. 17-71540 – BEM |
| | : | |
| DEBTOR. | : | |
| | : | |
| DANIEL M. MCDERMOTT, | : | |
| UNITED STATES TRUSTEE, | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| -vs- | : | ADVERSARY PROCEEDING NO. |
| | : | |
| IRVIN GUS HALL, II | : | |
| | : | |
| DEFENDANT. | : | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

COMES NOW Daniel M. McDermott, United States Trustee for Region 21 (the "United States Trustee"), and files this Complaint under Bankruptcy Code section 727 seeking denial of discharge in this case.

**I.    PRELIMINARY STATEMENTS**

1.    This adversary proceeding arises out of and relates to the case of Irvin Gus Hall, II, ("Debtor" or "Defendant") under chapter 7 of title 11, Case No. 17-71540-BEM.

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157(a), and 157(b)(1), 11 U.S.C. § 727, and Rule 4004 of the Federal Rules of Bankruptcy Procedure.

3.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

4. This Court has jurisdiction over Defendant, who is the debtor in the underlying bankruptcy case pending before this Court.

5. The United States Trustee is an Executive Branch official who has standing to raise, appear, and be heard on any issue in any case or proceeding under title 11. 11 U.S.C. § 307.

6. The United States Trustee files this proceeding pursuant to the authority granted to him in 11 U.S.C. § 727(c)(1) of the United States Code.

7. Venue is proper in this Court under 28 U.S.C. § 1409(a).

## II.   TIMELINESS OF COMPLAINT

8. Federal Rule of Bankruptcy Procedure 4004 requires complaints under section 727 be filed within 60 days after the first date set for the meeting of creditors under section 341(a) unless, on request filed before the time has expired, the Court for cause extends the time for filing the motion to dismiss.

9. The chapter 7 section 341(a) meeting of creditors was first set for January 16, 2018, and the Rule 4004 deadline was March 19, 2018.

10. On March 19, 2018, the United States Trustee timely filed a motion for extension of the Rule 4004 deadline (Doc. No. 27).

11. On March 20, 2018, the Court entered an order granting the motion for extension which extended the Rule 4004 deadline for the United States Trustee through April 27, 2018 (Doc. No. 29).

12. This complaint is timely under Federal Rule of Bankruptcy Procedure 4004(b).

**III.   ALLEGATIONS OF FACT**

13.   On December 14, 2017, Debtor commenced case 17-71540-PMB by filing a petition for relief under chapter 7 of the United States Bankruptcy Code (Doc. No. 1).

14.   Along with his petition, Debtor signed and filed, under penalty of perjury, schedules A/B through J (each a "Schedule" or collectively "Schedules") and a statement of financial affairs (the "Statement of Financial Affairs") (Doc. No. 1).

15.   Debtor signed his petition, Schedules, and Statement of Financial Affairs on or about December 23, 2017 after being released from the Douglas County Jail.

16.   On March 6, 2018, the United States Trustee examined Debtor pursuant to Fed. R. Bankr. P. 2004 (the "2004 Examination").

17.   On March 21, 2018, Debtor filed an amended statement of financial affairs (the "Amended Statement of Financial Affairs") and amended schedules A/B, C, and E/F (each an "Amended Schedule" or collectively, "Amended Schedules").

**A.  Debtor's Business and Employment**

18.   On April 28, 2015, Debtor, together with his wife, Jillian B. C. Hall, formed 20 Bar West & Grill, LLC ("20 Bar West").

19.   20 Bar West operated a full service restaurant and bar in Douglasville, GA until early 2018.

20.   20 Bar West opened the restaurant for business on October 28, 2016.

21.   From the date 20 Bar West opened until it closed in early 2018, 20 Bar West employed Debtor.

22.   Debtor did not receive a w-2 or 1099 for the calendar years 2015, 2016, or 2017.

23.   Debtor generally received his earned wages in cash.

24. Debtor did not keep records of the cash wages he received.

25. Debtor did not keep records or receipts evidencing the disbursement of his cash wages.

26. In furtherance of the business, Debtor borrowed money, in the form of a credit card, from his father.

27. Debtor used the money he borrowed from his father to purchase televisions for use at the 20 Bar West premises.

28. Prior to working at 20 Bar West, Debtor worked as a promoter for a variety of nightclubs.

29. At the 2004 Examination, Debtor testified that he also owned an interest in HUH Holdings, LLC ("HUH").

**B.  Debtor's Schedules and Statement of Financial Affairs**

30. In response to question 11 in Schedule A/B, Debtor stated "No." indicating he did not own or have any legal or equitable interest in any clothes.

31. In response to question 11 in Amended Schedule A/B, Debtor stated he owned or had a legal or equitable interest in clothes with a total value of $1,750.00.

32. At the 2004 Examination, Debtor testified that he owned clothing, including suits, with an estimated value of $5,000.00 to $7,000.00.

33. In response to question 1 in the Statement of Financial Affairs, Debtor stated he received wages, commissions, bonuses, and tips totaling $15,000.00 in calendar year 2015.

34. In response to question 1 in the Statement of Financial Affairs, Debtor stated he received wages, commissions, bonuses, and tips totaling $15,000.00 in calendar year 2016.

35. In response to question 1 in the Statement of Financial Affairs, Debtor stated he received wages, commissions, bonuses, and tips totaling $12,500 from January 1, 2017 through December 14, 2017.

36. In response to question 18 on the Statement of Financial Affairs and the Amended Statement of Financial Affairs, Debtor stated "No." to the following question:

> Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?

37. In response to question 27 on the Statement of Financial Affairs, Debtor checked "No. None of the above applies." to the following:

> Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?
> - A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
> - A member of a limited liability company (LLC) or limited liability partnership (LLP)
> - A partner in a partnership
> - An officer, director, or managing executive of a corporation
> - An owner of at least 5% of the voting or equity securities of a corporation

38. In response to question 27 on the Amended Statement of Financial Affairs, Debtor indicated he had interests in HUH LLC and 20 Bar West, LLC.

**C. Debtor's Transfers**

39. At the 2004 Examination, Debtor testified that he transferred his interest in 20 Bar West to Mrs. Hall in early 2017.

40. At the 2004 Examination, Debtor testified he transferred his interest in HUH on or about May 11, 2016.

41. At the 2004 Examination, Debtor testified he transferred the televisions used at the 20 Bar West property to a pawn shop on Fairburn Road in Douglasville, GA.

- 5 -

42. During Debtor's incarceration at the Douglas County Jail, Debtor and Mrs. Hall discussed over several phone calls removing property from 20 Bar West.

43. Transcripts of Debtor's calls with his wife reflect the following:

Jillian Hall: I think we need to sell this place. If we can get it between 150 and 200 and somebody is willing to come in at night and get the shit out of here, I think we should do it. And when George gets the key and comes on in, it will be nothing here but studs.

XXX

Jillian Hall: And if somebody wants to write us a check in the next couple of days for a couple hundred thousand, I say we take it and pay the rent because that's going to fall under your bankruptcy anyway. I'll file a 20 BarWest bankruptcy. I'm going to do a Chapter 7 on 20 BarWest. And let George come in here and see what he can do with the walls.

Jillian Hall: I'd even let somebody have these hardwoods.

XXX

Jillian Hall: And that's why I'm going to sell this shit and shut it down and let him come look for it.

XXX

Jillian Hall: Do you want to have worked here the way you have worked your ass off and the way I worked my ass off and George gets to come take everything and we get nothing?

Irvin Hall: Well, he really couldn't do that anyway because the worst thing to do I can give the building back to the landlord.

Jillian Hall: Yeah. But you will give the building back to the landlord minus the kitchen equipment, minus the marble, minus the fucking shit that costs in this motherfucker, minus the sound system.

Irvin Hall: Yeah. Take all that shit out.

Jillian Hall: Yes. And if somebody wants to come in here at night with their (inaudible) fucking get it and they wrote us a check for $200,000, we're going to take it; right?

Irvin Hall: Of course. But you can't do that until I get out of here.

- 6 -

XXX

Jillian Hall: No. No. These people don't buy businesses. They buy equipment, baby. They're coming in here to buy just the equipment and leave the fucking studs.

XXX

Jillian Hall: They're not buying the business. They don't care how the business is being run. They don't care how it's doing. They just want to come and buy your chairs, your tables, your TVs. Whatever has got value.

XXX

Jillian Hall: I'm not going to, but we really need to have a talk because I'm -- if you are here this evening or tomorrow morning, I'm going to give you what the offers are. But I have spoken with Thomas. I've spoken with Renard. I've spoken with the bankruptcy attorney. We're going to end up with nothing if we don't sell this place.

Irvin Hall: We're going to end up with what?

Jillian Hall: With nothing because George is going to be able to win.

Irvin Hall: Right. We can't fight him. I told you that.

Jillian Hall: So we're going to sell it.

Irvin Hall: Right. I'm fine with that.

Jillian Hall: And he says Willie --Willie -- his friend Willie -- Renard's friend Willie will come in and buy the hardwood. He'll buy the backsplash. He'll buy the bar. And I'm going to give Willie some offers on what it would be for the kitchen equipment, the chairs, the tables. When George gets a key to this place, I want him to walk in and find studs.

XXX

## COUNT I - REQUEST FOR DENIAL OF DISCHARGE
## UNDER 11 U.S.C. § 727(a)(2)(B)

44. The United States Trustee hereby incorporates by reference each and every allegation contained in paragraphs 1 through 43, inclusive.

- 7 -

45. Section 727(a)(2)(B) provides the Court shall grant Debtor a discharge, unless

> the debtor, with the intent to h hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— . . . property of the estate, after the date of the filing of the petition.

46. "The purpose of [§ 727(a)(2)(B)] is to deny a discharge to debtors who fail to disclose transactions regarding their assets subsequent to the filing of the bankruptcy petition." *In re Clark*, 332 B.R. 865, 871 (Bankr. C.D. Ill. 2005) (citing *In re Wolmer*, 57 B.R. 128 (Bankr. N.D. Ill. 1986)).

47. Accordingly, the United States Trustee requests the Court deny Debtor's discharge pursuant to Bankruptcy Code section 727(a)(2)(B) because Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under Title 11, transferred, removed, destroyed, mutilated, or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the estate, after the date of the filing of the petition.

### COUNT II - REQUEST FOR DENIAL OF DISCHARGE
### UNDER 11 U.S.C. § 727(a)(3)

48. The United States Trustee hereby incorporates by reference each and every allegation contained in paragraphs 1 through 43, inclusive.

49. Section 727(a)(3) provides the Court shall grant Debtor a discharge, unless

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

50. "Debtors have an affirmative duty to provide documents that memorialize their financial history for a reasonable period past to present, and neither the trustee nor the creditors is required to ferret out the required records." *In re Isles*, 297 B.R. 910, 915 (Bankr. S.D. Fla. 2003).

51. "It is the debtor's duty to maintain and provide the court with organized records of [his] financial dealings." *Id.* (citing *Union Planters Bank v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002)). "[N]either the court nor a creditor is required to reconstruct a debtor's financial situation by sifting through a morass of checks and bank statements." *Union Planters Bank v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002).

52. In this case, Debtor failed to keep or maintain any meaningful records of his business transactions.

53. Debtor's failure to keep or maintain records of his business transactions makes it impossible for the United States Trustee and other parties to ascertain the true amount of Debtor's income.

54. Debtor has not provided any reasonable justification for his failure to maintain records of his business and employment transactions.

55. Accordingly, the United States Trustee requests the Court deny Debtor's discharge pursuant to Bankruptcy Code section 727(a)(3) because Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtors' financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

### COUNT III - REQUEST FOR DENIAL OF DISCHARGE
### UNDER 11 U.S.C. § 727(a)(4)(A)

56. The United States Trustee hereby incorporates by reference each and every allegation contained in paragraphs 1 through 43, inclusive.

57. Section 727(a)(4)(A) provides the Court shall grant Debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case— . . . made a false oath or account."

58. For a movant to prevail on denial of a discharge under section 727(a)(4)(A), "the false oath must be both (1) fraudulent and (2) material." *In re Dulock*, 250 B.R. 147, 152 (Bankr. N.D. Ga. 2000) (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991)).

59. "Because a debtor signs the petition and schedules under penalty of perjury, a false statement or omission of information from the debtor's petition is a false oath within the meaning of 11 U.S.C. § 727(a)(4)(A)." *In re Woodward*, 2005 WL 6486397, at *2 (Bankr. N.D. Ga. Nov. 17, 2005) (citing *In re Chalik*, 748 F.2d 616 (11th Cir. 1984)).

60. Testimony at an examination pursuant to Rule 2004 are statements made under oath for purposes of section 727(a)(4)(A). *See In re Granrath*, 560 B.R. 515 (Bankr. N.D. Ill. 2016).

61. "Deliberate omissions from the schedules may constitute false oaths and result in the denial of a discharge. . . . [S]ince defendants will rarely admit their fraudulent intent, actual intent may be inferred from circumstantial evidence.  A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive.  However, the discharge may not be denied when the untruth was the result of a mistake or inadvertence." *In re Dulock*, 250 B.R. at 152 (internal citations omitted).

62. A false oath is material "if it bears a relationship to the debtor's business transactions or estate, or concerns of the discovery of assets, business dealings, or the existence or disposition of property." *Id.* at 153 (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)).

63. In his Statement of Financial Affairs, Mr. Hall failed to disclose the transfer of his interest in 20 Bar West to Mrs. Hall.

64. In his Statement of Financial Affairs, Debtor failed to disclose the May 11, 2016 transfer of his interest in HUH Holdings, LLC.

65. In his Schedules and Statement of Financial Affairs, Debtor failed to disclose all of his assets and liabilities.

66. In his Amended Schedules and Amended Statement of Financial Affairs, Debtor provided information which conflicts with his testimony at the 2004 Examination.

67. The statements in Debtor's schedules relate to Debtor's business transactions and estate, and concern the discovery of assets, business dealings, or the existence or disposition of property.

68. Accordingly, the United States Trustee requests the Court deny Debtor's discharge pursuant to Bankruptcy Code section 727(a)(4)(A) because Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.

WHEREFORE, Plaintiff prays for the following relief:

A. for an order and judgment denying the Debtor discharge from his debts pursuant to 11 U.S.C. § 727(a)(2)(B);

B. for an order and judgment denying the Debtor discharge from his debts pursuant to 11 U.S.C. § 727(a)(3);

C. for an order and judgment denying the Debtor discharge from his debts pursuant to 11 U.S.C. § 727(a)(4)(A); and

D. for such other and further relief as the Court deems just and proper.

DANIEL M. MCDERMOTT
UNITED STATES TRUSTEE
REGION 21

_____/s/_____
Lindsay P. S. Kolba
Georgia Bar No. 541621
United States Department of Justice
*Office of the United States Trustee*
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
404-331-4437, ext. 152
lindsay.p.kolba@ust.doj.gov
